**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZOSMA VENTURES, INC., | ) CV 12-1404 RSWL (FFMx) |
| Plaintiff, | ) **ORDER re: Defendants Mojdeh Amini Nazari, Viva Pharmaceutical, Inc. and American Export Lines, Inc.'s Motion for Summary Judgment or, in the alternative, Summary Adjudication [89]** |
| v. | |
| MOJDEH AMINI NAZARI, an individual and d.b.a. PARSMED TRADING et al., | |
| Defendants. | |

Currently before the Court is Defendants Mojdeh Amini Nazari, Viva Pharmaceutical, Inc. and American Export Lines, Inc.'s ("Defendants") Motion for Summary Judgment or, in the alternative, Summary Adjudication [89]. Having reviewed all papers submitted pertaining to this motion, **THE COURT NOW FINDS AND RULES AS FOLLOWS:**

The Court hereby **DENIES** Defendants' Motion.

///

1

**I. BACKGROUND**

This Action stems from Plaintiff Zosma Ventures, Inc.'s ("Plaintiff") trademark infringement dispute with Defendants Mojdeh Nazari ("Nazari"), Viva Pharmaceutical, Inc. ("Viva"), and American Export Lines, Inc. ("AEL") (collectively, "Defendants").[1]

Plaintiff is a Delaware corporation that is in the business of selling dietary and nutritional supplements, such as fish oil supplements, through its subsidiary company, Formulated Sciences, Inc. ("Formulated Sciences"), a California Corporation. Plaintiff is the trademark holder of various Formulated Sciences trademarks ("Zosma Trademarks"), including the mark FORMULATED SCIENCES, that are at issue in this Action.

Plaintiff alleges that Defendant Nazari was previously the exclusive licensee of its products in the Middle East between 2003 and 2008. However, Plaintiff alleges that in 2008, Defendant Nazari ceased communications with Plaintiff, reneged on a purchased order, and discontinued her rights to use Plaintiff's trademark.

Plaintiff alleges that in 2010, it learned that counterfeit fish oil products bearing the Zosma Trademarks were being sold in Iran, and suspected that

---

[1] On September 6, 2012, the Court dismissed Defendants Hossein Givi, Shoreh Ershadi, and Intermedic Inc. because Plaintiff failed to timely serve these defendants [64].

2

Defendant Nazari was involved. Some of the nutritional supplements allegedly bear the name "FormAlated Sciences." Further, in December 2011, Defendant Givi (who has since been dismissed from this Action) allegedly submitted a trademark application to the USPTO for the mark FORMATIVE SCIENTISTS, which was denied.

Plaintiff claims that Defendants operated a multinational counterfeiting scheme with its nerve center in Los Angeles involving fish oil products. Plaintiff alleges that Defendants Nazari and Givi utilized a manufacturer, Defendant Viva, located in British Columbia, to produce fish oil products that were labeled with Plaintiff's trademarks or marks confusingly similar to Plaintiff's trademarks. Plaintiff alleges that once Viva completed manufacture of the fish oil products, the goods were shipped to Iran *through* the United States by AEL.

In its Complaint, Plaintiff alleges claims for (1) federal trademark infringement and counterfeiting under the Lanham Act; (2) unfair competition and false designation under the Lanham Act; (3) federal trademark dilution under the Lanham Act; (4) common law trademark and trade name infringement; (5) California trademark dilution; and (6) California state law unfair competition.

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party makes this showing, the non-moving party must set forth facts showing that a genuine issue of disputed material fact remains. <u>Celotex</u>, 477 U.S. at 322. The non-moving party is required by Federal Rule of Civil Procedure 56(e)[2] to go beyond the pleadings and designate specific facts showing a genuine issue for trial exists. <u>Id.</u> at 324.

### III. DISCUSSION

**A.  Evidentiary Objections**

The Parties submitted numerous evidentiary objections to various declarations and documents filed with the Court in support of the Parties' papers. To the extent the Court has relied on evidence to which the Parties have objected those objections are **OVERRULED**.

---

[2] The Federal Rules of Civil Procedure were amended on December 1, 2010. Federal Rule of Civil Procedure 56(e) has now been codified as Federal Rule of Civil Procedure 56(c).

4

**B.    Analysis**

In their Motion, Defendants assert that Plaintiff does not have evidence to support its trademark claims. Further, Defendants argue that this case involves purely extraterritorial acts, and thus the Court should decline jurisdiction.

On balance, the Court finds that there are genuine issues of material fact with respect to Plaintiff's trademark infringement claim.

In particular, the Court finds that there are genuine issues of fact as to whether Defendant Nazari used Plaintiff's marks "in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services . . . which such use is likely to cause confusion". 15 U.S.C. § 1114. Under 15 U.S.C. § 1127, a mark is in "use in commerce" when (1) the mark has been placed on the goods or their containers, labels or the documents associated with the goods or their sale, and (2) the goods are "sold or transported in commerce." The "or transported" language of 15 U.S.C. § 1127 makes it clear that a "use in commerce" under the Lanham Act is not limited to sales. Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc., 285 F.3d 848, 855 (9th Cir. 2002). For example, "[t]he sending of a product from Los Angeles to New York with its label attached so that its trademark could be registered has been considered transportation in commerce." (citing Drop Dead Co. v.

S.C. Johnson & Son, Inc., 326 F.2d 87, 93 (9th Cir. 1963)).

Plaintiff has submitted evidence showing that documents were seized at Defendant Nazari's residence, including packing lists from Viva indicating that Givi and someone named "Mojie" ordered "Formulated Sciences" fish oil "Omega 3" softgels. See, e.g., Vega Decl. Ex. A-12. There is evidence that Defendant Nazari goes by the name "Mojie". See, e.g., Nazari Decl. Ex. A (Nazari referred to as "Mojie" in an email). One "order agreement" shows that Hossein Givi and "Mojie" may have ordered 60,000 bottles of fish oil soft gels, and requested that the words "FS Omega" be printed on the softgels. There is also documentation showing that Defendant Nazari wire transferred money to Viva via a bank account titled "ParsMed Trading". Id. Ex. A-36. Plaintiff has also provided an email showing that Viva sent Defendant Nazari a list of prices for fish oil softgels. Id. Ex. A-38 (email from Annie Huang of Viva). Another document contains a sample proof of an infringing label that appears to be approved by Defendant Nazari. Id. Ex. A-3. There is also a document from "Parrot Label" showing that Defendant Nazari ordered labels that were shipped to Viva in Canada. Id. Ex. A-30. Another document indicates that labels were purchased from "Great Little Box" by Defendant Nazari. Id. Ex. A-29. Additionally, Plaintiff has provided numerous copies of freight bills

issued by AEL that show that Defendant Nazari shipped "food supplements" to Parsmed in Iran, usually via Canada, a U.S. port, and a European port. <u>See</u>, <u>e.g.</u>, <u>Id.</u> Ex. C-9 (shipment from Baltimore to Bushehr, Iran); Ex. C-11 (shipment from Los Angeles to Bandar Abbas, Iran); Ex. C-28 (shipment from New York to Dusseldorf, Germany). Further, Plaintiff offers evidence showing that Defendant Nazari owns an English language website offering for sale "fish oil omega 3" – a product similar to Plaintiff's – for anywhere between $ 12.75 – $ 33.50. Edalat Decl. ¶ 37. The website contains an "order" tab. <u>Id.</u> The image of the bottle of fish oil on the webpage has a label that is very similar, if not identical, to the label depicted in the "proof" that appears to be approved by Defendant Nazari.

This evidence demonstrates that there factual disputes as to whether Defendant Nazari (1) used Plaintiff's marks to advertise Defendants' goods online, (2) used Plaintiff's marks on the packaging of fish oils, and (3) shipped counterfeiting fish oils to Iran from the United States.

Further, Plaintiff raises genuine issues of fact as to whether Viva directly infringed Plaintiff's marks by placing labels onto counterfeit goods bearing marks similar to the Zosma Trademarks and then shipping them to the United States. Although Viva denies any awareness of infringement, there is some evidence suggesting the opposite. Some of the purchase orders

involving Viva appear to show that Defendant Nazari instructed Viva to bottle fish oils using labels provided by Defendants, and that the fish oil bottles may have been marked "Made in the USA" even though the fish oils were being manufactured in Canada. There is also a letter on what appears to be Viva letterhead from Ivan Ko stating that "Viva Pharmaceutical is a manufacturer of FormAlated Siences [sic] (formerly known as Formulated Sciences or F.S.) Products." In viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable juror could find that Viva knew about its involvement in the alleged counterfeit scheme.

There are also genuine issues of material fact as to whether Viva and AEL are liable under the theory of contributory infringement. Under contributory infringement "[i]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." Inwood Labs. Inc. v. Ives Labs., Inc., 456 U.S. 844, 854 (1982). As discussed above, there is some evidence suggesting that Viva was aware that it was labeling fish oils "Made in the USA" even though the fish oils were being made in Canada. Thus there is a genuine dispute as to whether Viva knew

8

or had reason to know that Defendant Nazari was engaging in infringement.

As to AEL, Defendants assert that AEL had no reason to know about the alleged infringement. Defendants cite to an affidavit by "Alex Farasat" who is an "employee" of AEL. He states that it is not customary for AEL to check the name on the label of the product being shipped. However, "[a]n affidavit or declaration used to support . . . [a motion for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56. Defendants fail to show that Farasat is competent to testify as to the customary practices of AEL. The declaration does not explain what role Farasat plays within the organization. A grant of summary judgment in AEL's favor based solely on this evidence would be improper. Thus, the Court finds that Defendants have failed to meet their summary judgment burden.

As Defendants acknowledge, Plaintiff's remaining federal and state claims also depend on the resolution of the foregoing issues. Therefore, the Court also **DENIES** summary judgment as to those claims.

As to Defendants' extraterritorial jurisdiction argument, the Court finds that there are allegations of activities occurring *within* the United States, including Defendant Nazari's activities in the United

9

States, Viva's potential shipment of counterfeit goods to the United States, and AEL's shipment of counterfeit goods away from the United States.  Thus, the Court has jurisdiction over these United States activities.

Notwithstanding, to the extent that there are any acts of infringement occurring solely abroad, the Court also finds that extraterritorial jurisdiction is appropriate here.  The extraterritorial reach of the Lanham Act is analyzed under a three-part test.  See Love v. Associated Newspapers, Ltd., 611 F.3d 601, 612 (9th Cir. 2010).  "For the Lanham Act to apply extraterritorially: (1) the alleged violations must create some effect on American foreign commerce; (2) the effect must be sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority."  Id.

As to the first element, the location of the acts that have caused harm bears on whether there is an effect on U.S. foreign commerce.  See id. at 613 (no effect on U.S. foreign commerce where albums were manufactured in Europe and album never reached U.S. market).  However, where a defendant directs acts committed abroad from within the United States that have harmed a U.S. corporation, there is some effect on U.S. foreign commerce.  See Reebok Int'l v. Marnatech

Enters., 970 F.2d 552, 554-55 (9th Cir. 1989) (some effect on U.S. foreign commerce existed where defendants in the United States organized and directed the manufacture and sale of counterfeit shoes in Mexico and their subsequent importation into the United States); see also Van Doren Rubber Co. Inc. v. Marnatech Enters., Inc., Civ. No. 89-1362 S BTM, 1989 WL 223017, *2 (S.D. Cal. Oct. 17, 1989) (holding that there is extraterritorial jurisdiction, and finding that "it appears that defendants at least organize and direct the manufacture of counterfeit shoes from the United States.  Defendants receive the money from their sales of counterfeit shoes in the United States and wire money to what appears to be the manufacturers of the counterfeit shoes in Korea from the United States. . ."). Here, there appears to be evidence supporting Plaintiff's allegations that Defendants direct their activities from California where Defendant Nazari resides.  Further, Plaintiff alleges that AEL and Viva direct their activities at the United States by transporting infringing goods to and from the United States.  See Mattel, Inc. v. MCA Records, Inc., 28 F. Supp. 2d 1120, 1130-31 (C.D. Cal. 1998) (finding effect on American foreign commerce where foreign defendants direct activity at the U.S. and derived profits from their activities in the U.S.).

    As to the second element, Plaintiff alleges that it suffered a cognizable injury.  Prior to Defendants'

alleged acts, Plaintiff and Defendant Nazari exported legitimate fish oil pills manufactured by Plaintiff to the Middle East.  There is evidence suggesting that once their business relationship ended, counterfeit goods were sold instead of Plaintiff's.  Based on these acts, Plaintiff, a U.S. corporation, suffered monetary injury.

The last element is dependent on the balancing of seven factors: (1) the degree of conflict with foreign law or policy; (2) the nationality or allegiance of the parties and the locations or principal places of business of any corporations involved; (3) the extent to which an order by a U.S. court can be expected to achieve compliance with the Lanham Act; (4) the relative significance of effects on the United States as compared with those elsewhere; (5) the extent to which there is an explicit purpose to harm or affect U.S. commerce; (6) the foreseeability of such effect; and (7) the relative importance to the violations charged of conduct that occurred within the United States as compared with conduct abroad.  See Star-Kist, Inc. v. P.J. Rhodes & Co., 769 F.2d 1393, 1395–96 (9th Cir. 1985).

Under the first factor, the Court should find that there is no current foreign proceeding.  The Ninth Circuit has noted that if "there are no pending proceedings" abroad, then it would not "be an affront to the foreign country's sovereignty or law."  Ocean

Garden, Inc. v. Marktrade Co., 953 F.2d 500, 503 (9th Cir. 1991). As to the second factor, Plaintiff is a U.S. corporation, Defendants Nazari and AEL are in the U.S., and Viva is a Canadian citizen but does business in the United States. Therefore, this factor weighs in favor of extraterritorial application of the Lanham Act. As to the third factor, Plaintiff is seeking damages and injunctive relief relating to activities within the U.S., which would be enforceable should it succeed in this Action. The fourth, fifth, sixth and seventh factors are met because Plaintiff is alleging harm to a U.S. corporation and Defendants are engaged in activities that target the U.S. See Mattel, 28 F. Supp. 2d at 1130-31.

Thus, there have been sufficient activities geared toward the United States and sufficient impact in the United States for the Lanham Act to be applied extraterritorially.

## IV. CONCLUSION

For the reasons set forth above, this Court **DENIES** Defendants' Motion.

**IT IS SO ORDERED.**

DATED: May 30, 2013

*RONALD S.W. LEW*

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge